**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4106

WILLIAM MARSHALL REECE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(96-CR-122-F)

Argued: January 30, 1998

Decided: March 17, 1998

Before HAMILTON and LUTTIG, Circuit Judges, and
VOORHEES, Chief United States District Judge
for the Western District of North Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Tracy Chappell Curtner, HAFER, MCNAMARA,
CALDWELL, CUTLER & CURTNER, Raleigh, North Carolina, for
Appellant. Daniel Pearce Butler, Senior Trial Attorney, Public Integ-
rity Section, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Richard T. Gammon,

DEMENT, ASKEW, GAMMON, DEMENT & OVERBY, Raleigh, North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Public Integrity Section, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant-appellant William Reece was an official at the Bureau of Alcohol, Tobacco and Firearms (ATF) who abused his position in order to embezzle money from the agency. Reece eventually pled guilty to one count of mail fraud and one count of tax evasion, and at his sentencing hearing, the district court departed upward four levels from the sentencing guideline range. Reece appeals his sentence, and we affirm.

Over a period of several years, Reece orchestrated and implemented a fraudulent scheme that employed several persons and corporate entities to embezzle money from the government. Reece was employed by the ATF as the Program Manager for the Air Operation Section, a position which vested him with the responsibility for leasing certain aircraft to be used by the Section. Reece submitted requisition forms to ATF Headquarters in order to obtain approval of particular leases. Each form usually listed three companies and their respective bids for the particular aircraft lease. Reece, however, also rigged the bidding; the low bidder on each form was always a business secretly controlled by Reece. Reece then approved and caused invoices to be submitted for payment for the airplanes leased through this arrangement, even though Reece and the companies that he controlled did not actually provide any aircraft for use by the ATF. In payment for the services it never received, ATF Headquarters issued United States Treasury Checks to the company listed on each respec-

2

tive invoice. Those checks were mailed to post office boxes that were set up by associates of Reece who were acting under his direction. The funds were eventually deposited into bank accounts of companies controlled by Reece. In total, Reece received approximately $550,672 through this fraud. Furthermore, in 1990, Reece received $183,873 in income from this scheme that he did not report on his personal or corporate tax returns.

For his role in this fraud perpetrated against the taxpayers, Reece was eventually named in a two count criminal information filed in the Eastern District of North Carolina. Count I charged him with mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, and Count II charged him with tax evasion in violation of 26 U.S.C. § 7201. Reece subsequently pled guilty to both counts pursuant to a written plea agreement.

During Reece's sentencing hearing, the district court notified the defendant that it was considering an upward departure from the sentencing guideline range, and the court continued the hearing in order to provide the parties with an opportunity to present additional evidence regarding factors that might make departure appropriate. Eventually, the court departed upward two levels under U.S.S.G. § 2C1.7 Application Note 5, and two levels under § 3B1.1 Application Note 2. The addition of these four offense levels established a total criminal offense level of 27 which, when combined with Reece's criminal history Category I, yielded a sentencing range of 70 to 87 months. The court then imposed a sentence of 87 months in addition to three years of supervised release and $195,723 of restitution to the ATF. In this appeal, Reece challenges both sets of upward departures. We conclude that the district court did not abuse its discretion by departing upward four levels from the guidelines range.

Section 2C1.7 is entitled "Fraud Involving Deprivation of the Intangible Right to the Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions." Application Note 5, which is the provision relied upon for the § 2C1.7 departure here, provides that,

> [w]here the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental

function, process, or office that may cause loss of public confidence in government, an upward departure may be warranted. <u>See</u> Chapter Five, Part K (Departures).

Appellant argues that the district court abused its discretion by departing upward two levels based upon § 2C1.7 Application Note 5 because his only crime was simple theft from the government which falls within the "heartland" of § 2C1.7, thus rendering any departure unwarranted. Reece further argues that departure under the Application Note was unwarranted because the sentencing court made insufficient findings to support its conclusion that Reece's criminal conduct was part of a "systematic or pervasive corruption" that "may cause loss of public confidence in government."

We find neither of these two arguments persuasive. First, although Reece's conduct of embezzling money from the government may fall within the ordinary meaning of § 2C1.7, departure here was entirely justified because appellant's conduct <u>also</u> fits easily within the language of Application Note 5 since Reece did not simply steal once, but rather, embezzled large sums of money over a period of years and took elaborate steps to avoid detection.

Second, there were clearly sufficient facts before the district court to justify departure under Application Note 5. For instance, the evidence that justified the district court's conclusion that Reece's scheme amounted to "systematic or pervasive corruption," included the following: the scheme resulted in a reported loss to the government of $1.45 million which the sentencing judge termed the "largest internal theft in ATF history," J.A. at 116; the scheme apparently spanned 5 years, and involved 22 different submissions to the ATF to set up rigged and fraudulent contracts; J.A. at 147; the scheme involved the use of phony invoices and fraudulent VISA charges, J.A. at 147; and the investigation and prosecution of the theft diverted funds from legitimate law enforcement functions of the ATF. J.A. at 147. There was also substantial evidence supporting the district court's conclusion that Reece's scheme "may cause loss of public confidence in government," in particular, the fact that there were multiple news reports of Reece's fraud, J.A. at 121, as well as the fact that Reece's fraud diverted a substantial amount of resources from other purposes because of the time and money necessary to investigate and prosecute

4

Reece. J.A. at 116-17. On the basis of this and other evidence, the district court quite reasonably concluded that,

> [w]hen you have people who are high ranking and people in government, the head of a division, it makes one wonder about the quality or makes one wonder whether the citizens' faith in the government is undermined, such high level people engage in criminal activity. It seems to me it is almost a given that when you have people in positions of trust, they bring shame upon the leadership roles that they occupy. It is a very difficult thing. I think it does incalculable harm to the government in the sense that it breeds a lack of respect for those who are engaged in it, not to mention the cost of investigation in sorting it out. It takes tremendous assets away from the bureau to make investigations that would be available for other useful purposes. I would guess several hundred thousand dollars at least the government spent in investigating this man could have been put to good use investigating alcohol, tobacco and firearm crimes.

J.A. at 129-30. Viewing these findings of fact by the district court, we are convinced that the district court did not abuse its discretion by departing upward under Application Note 5 by two levels. Although Reece contends that these factual conclusions do not support the departure because the judge's language was speculative and equivocal ("it makes one wonder," "it seems to me," etc.), the language of Application Note 5 renders departure appropriate where the defendant's conduct "may" destroy public confidence in government, and we conclude that the facts here certainly establish that it was not an abuse of discretion for the district court to conclude that such a large and highly publicized scheme of public corruption "may cause loss of public confidence in government."

The district court also departed upward two levels under § 3B1.1 Application Note 2. Section 3B1.1, which is entitled "Aggravating Role," provides:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. The district court did not employ an adjustment under any of these subsections, but rather, performed an upward departure based upon Application Note 2 of this section which provides that,

> [t]o qualify for an <u>adjustment</u> under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward <u>departure</u> may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 Application Note 2 (emphasis added).

Reece insists that there are no findings to support this departure upward under Application Note 2. We disagree. In the course of perpetrating his fraud, Reece committed the following acts: (1) he established four bogus corporate entities, J.A. 63-74, J.A. 84-85, J.A. 93-94; (2) he used several individuals as fronts for the companies, J.A. 63, J.A. 85, J.A. 147; (3) he used individuals to open post office boxes and to use those boxes to receive fraudulently obtained government checks, J.A. 78, J.A. at 84, J.A. 147; (4) he used individuals as signatories on bank accounts for the corporate entities, J.A. 147; and (5) he used other companies to perpetrate VISA card fraud against the government, J.A. 63-66, J.A. 115. Given these facts, the district court did not abuse its discretion by concluding that Reece "exercised management responsibility over the property, assets, or activities of a criminal organization"; Reece exercised management responsibility over the property, assets, and activities of an organization, and that

6

organization engaged in criminal activity, namely, Reece's aircraft lease fraud. Although Reece insists that this organization is not a "criminal organization" within the meaning of Application Note 2 because it did not further any other criminal enterprises beyond the ATF fraud, we see nothing in the term "criminal organization" that limits its application to organizations that further multiple criminal purposes.

Accordingly, we affirm appellant Reece's sentence.

AFFIRMED

7